IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
UNITED STATES OF AMERICA

                                                  Case No. 92- CR 35 ( DNH)

    v.

Robert Lawrence
            Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GOVERNMENT'S SENTENCING MEMORANDUM

      The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that Robert Lawrence be resentenced to imprisonment for a term of life plus five years on each of the Counts I, VI, and VII, all to be served concurrently, and the term of five years on Count VIII to be served consecutively.

      This new sentencing hearing arises out of the Supreme Court's decision in *Miller v. Alabama,* 132 S. Ct. 2455 (2012) finding that a mandatory life without parole sentence for those under the age of 18 at the times of their crimes violates the Eighth Amendment and requires the court to conduct a new sentencing as to Counts I, VI, and VII. *Miller* requires that a discretionary sentencing process must occur before a life without parole sentence may be imposed on a juvenile offender. However, it does not place a per-se categorical prohibition on the imposition of such a sentence for a juvenile. *Miller*, 132 S. Ct. at 2460, 2469. The government respectfully requests that the court, after its consideration of sentencing options, find

that the only just and appropriate sentence is the imposition of a life term of imprisonment.

## I.   INTRODUCTION

Robert Lawrence was part of a drug conspiracy headed by Jaime Davidson which operated in the Syracuse area from the spring of 1988 to October of 1990.  Second in command was Lenworth Parke.  In addition to Lawrence, co-conspirators included Juan Morales and Gary Anthony Stewart.

In the Fall of 1990, members of the Syracuse DEA Drug Task Force became aware of their drug selling activity. In the course of their investigation, arrangements were made for Syracuse Police Officer Wallie Howard, assigned to the DEA as a Task Force agent, to purchase 2 kilograms of cocaine for $42,000.  Howard, a nine year veteran of the department was an experienced undercover officer.   The sale was to take place on October 30th in the parking lot of Mario's Big M Market, on South Salina Street in Syracuse. In this "buy-bust", operation, agents planned to arrest Lawrence, Morales and Stewart immediately following the cocaine sale. Unknown to investigators, Davidson had set in motion a plan to have Lawrence, Morales and Stewart seize the $42,000 of buy money from Agent Howard in an armed robbery.

As events unfolded on October 30th, arrangements were made to make the purchase of the cocaine.   An informant, Luther Gregory, was first taken by Lawrence, Morales and Stewart to a nearby apartment to check the quality of the cocaine.   Once there, he was assaulted by the three men and tied up.   Morales then drove Lawrence and Stewart to the Big M Market parking lot where Lawrence and Stewart got out of their car and approached the vehicle in which Agent Howard was sitting in the passenger seat.

In the failed robbery attempt that followed, Lawrence, while standing alongside Howard's

2

vehicle, fired a single round from a .357 caliber revolver into the back of Agent Howard's head, killing him.  Moments later, investigators arrested Lawrence, Morales and Stewart.  Davidson and Parke were later arrested. Lawrence was sixteen years old at the time of the shooting.

Lawrence, along with Davidson, Parke, Morales and Stewart were charged in an eight-count indictment filed January 29, 1992 with various drug crimes including the murder of Task Force Agent Wallie Howard.   Following a five week trial, all were convicted. A sixth defendant, Dean Thomas, was acquitted.   On May 28, 1993, Lawrence Davidson, Parke, Morales and Stewart were each sentenced to life plus five years on Counts I, VI, VII and VIII.   The sentences for Parke, Morales and Stewart remain in effect.

## II.   APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

### 1.   Statutory Minimum and Maximum Sentences

Lawrence's conviction for conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 USC §846 and §841(a)(1), subjects him to a statutory minimum term of no less than 20 years imprisonment and up to life, if death or serious bodily injury results. (Count I)   The murder of an agent of the DEA Drug Enforcement Task Force in the perpetration of and attempt to perpetrate a robbery while such agent is engaged in his official duties in violation of 18 USC §1111, §1114 and §2, subjects the defendant to a maximum term of imprisonment of life. (Count VI) The intentional killing of any Federal, State, or local law enforcement officer engaged in such officer's official duties during the commission of a conspiracy to distribute cocaine in violation of 21 USC §848(e)(1)(B), and 18 USC §2, subjects the defendant to a minimum term of imprisonment of 20 years and maximum term of imprisonment of life. (Count VII)

3

**2.    Guidelines Provisions**

The government adopts the guideline calculations set forth in the Presentence Investigation Report dated May 7, 1993 and amended as of December 11, 2013 providing a Total Offense Level of 43 and a guidelines range of imprisonment of life.

**III.   GOVERNMENT'S SENTENCING RECOMMENDATION**

At the initial sentencing in 1993, the court imposed life sentences on each defendant. While the law now requires a resentencing of Robert Lawrence due to his age at the time this offense was committed, no lesser sentence is warranted. The life sentence that the government recommends here is sufficient, but not greater than necessary to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2). Unlike his co-defendants, Lawrence is the individual directly responsible for the death of Agent Howard.  Lawrence shot Howard at near point-blank range during the commission of a planned armed robbery. In fashioning a sentence that is sufficient to address the seriousness of the offense, nothing less than a life sentence is warranted.   It is impossible to imagine a more egregious crime.

Despite Lawrence's age, he was fully aware of what he was doing on October 30, 1993. He had been involved in drug dealing for some time and was at the meeting that morning where the plan to rob Agent Howard of some $42,000 was put into action. There is no question that he clearly knew that he was engaged in a potentially deadly scenario with a loaded handgun and was a willing participant.

While Lawrence attempts to gain favor with the court in citing a troubled youth and

his "Statement of Acceptance of Responsibility" (attached to the revised PSR), a broader look at his prior statements made both at trial and in a subsequent Habeas motion reveal a lack of credibility and acceptance of responsibility.  In this regard, an examination of his prior statements is revealing.   See Govt. Ex. A – Trial Testimony and Gov't Ex. B, an affidavit he prepared in connection with a prior Habeas motion.

At trial, Lawrence claimed that the .357 revolver he used to shoot Agent Howard was given to him on October 30th by co-defendant Jaime Davidson at his girlfriend, Gwendolyn Morrow's apartment in Syracuse. See Ex. A, pages 8, 11-15, 59-60.   In July of 2000, at age 27, he submitted an affidavit to the court (Ex. B) contradicting his sworn trial testimony in now claiming that Jaime Davidson was "not even in Syracuse on that day (October 30th, 1990)." Ex. B. ¶7.  In an effort to create a theory of self-defense at trial, Lawrence testified "…And then I seen the man who shot Stewart *turn his hand towards me*," Ex. A, page 23, line 13-14. (Emphasis added) On cross examination, he testified "I didn't squeeze off. I didn't pull the trigger until I *seen his hand coming like this*, like he was going to shoot me or kill me, I didn't…".  Ex. A, page 46, lines 4-6. (Emphasis added) In his affidavit of July 2000, he contends that it was his attorney, James McGinty, who suggested "that the only way we could raise some type of doubt in the jury's mind, was to say that I was just turning the corner of Howard Jr.'s car trunk when I *seen his hand coming towards me*, and I backed up and squeezed the trigger and saw a little whole in the back right window". Ex. B. ¶26. (Emphasis added)   A full reading of Lawrence's July 2000 affidavit in the context of his prior trial testimony demonstrates he will say whatever he believes will advance his personal interests without regard for the truth. In the instant case, nothing the defendant has offered can lesser the necessity of

5

imposing a sentence consistent with the Sentencing Guidelines – a life sentence.

## CONCLUSION

Based on all of the information before the Court, the government respectfully requests that Lawrence be resentenced to imprisonment for a term of life plus five years on each of the Counts I, VI, and VII, all to be served concurrently, and the term of five years on Count VIII to be served consecutively.

Respectfully submitted this  20th  day of December, 2013,

       RICHARD S. HARTUNIAN
       United States Attorney

       /s/
By:

       John G. Duncan
       Executive Assistant United States Attorney
       Bar Roll No. 601100